[No. 16411.  *En Banc.*  June 14, 1921.]

The State of Washington, *on the Relation of American Savings Bank & Trust Company, Plaintiff*, v. The Superior Court for Okanogan County, *C. H. Neal, Judge, Respondent.*[1]

Corporations (195)—Actions—Venue—Transaction of Business. Where a trust company in the course of its business acquired by foreclosure fruit land in another county which it was compelled to cultivate until able to dispose of it, such cultivation would not constitute the transaction of its ordinary or customary business in such county, and hence it would not be liable to suit therein under Rem. Code, § 206, providing that "an action against a corporation may be brought in any county where the corporation transacts business."

Venue (9-1)—Domicile—Codefendants. Under Rem. Code, § 207, providing that actions must be tried in the county in which the defendants, or some of them, reside, a joint action against a corporation resident in another county and an individual who is a resident of another state was improperly brought in a county where neither resided, though real property belonging to both defendants had been attached on the ground of the non-residence of one of the defendants.

Parker, C. J., and Holcomb, J., dissent.

Application filed in the supreme court March 31, 1921, for a writ of prohibition to the superior court for Okanogan county, Neal, J., to restrain the trial of a case and compel the granting of a change of venue. Granted.

*Farrell, Kane & Stratton,* for relator.

*J. Henry Smith, P. D. Smith,* and *W. C. Brown,* for respondent.

Tolman, J. — The relator, the American Savings Bank & Trust Company, a corporation, was incorporated under the laws of this state in the year 1901; its

[1]Reported in 198 Pac. 744.

articles of incorporation naming its principal place of business as being in King county, and authorizing it to carry on the business of banking, with the usual powers pertaining to banks and trust companies.   The relator has never had an office for the transaction of business in Okanogan county, and at no time has it maintained an officer, agent, or other person upon whom process against it could be served, resident in said county.  Nor has the relator ever transacted any business in Okanogan county except as hereinafter referred to.

In September, 1916, the relator and one Murray, in the usual course of business in King county acquired a promissory note made by one Peterson for $25,000, and interest, together with a mortgage, given to secure the same, upon certain real estate consisting of orchard land situated in Okanogan county.

In August, 1918, the relator and Murray, as owners of the note and mortgage referred to, employed J. Henry Smith, an attorney at law practicing in Okanogan county, to foreclose the $25,000 mortgage, and thereafter, apparently with the knowledge and consent of the relator, P. D. Smith and W. C. Brown, also attorneys practicing in Okanogan county, were associated with J. Henry Smith as attorneys for plaintiff in such foreclosure action.   The action to foreclose the mortgage was commenced in Okanogan county and prosecuted to a judgment of foreclosure, from which an appeal was taken, and the judgment of foreclosure was thereafter affirmed by this court in *American Sav. Bank & Trust Co. v. Peterson,* 112 Wash. 101, 191 Pac. 837.  In the meantime, the real estate covered by the $25,000 mortgage, which was so foreclosed, being in part subject to the lien of a prior mortgage for $10,000, the relator and Murray, to protect themselves, acquired this first mortgage, procured it to be fore-

closed by the same attorneys, and thereafter upon fore-
closure sale purchased all of the property subject to
the mortgages for the amount due thereon. In the
month of March, 1919, for the purpose of protecting
and preserving the property so acquired, the relator,
and Murray took possession of the orchard lands cov-
ered by the mortgages and proceeded to cultivate,
prune, spray and care for the same, extended the irri-
gation system for the better irrigation and care of the
orchards, harvested the crop therefrom in the years
1919 and 1920, and are continuing in such possession
and care of the property, through their employees, for
the sole purpose, as relator alleges, of preserving the
value of the orchards and preventing the deterioration
of the property until such time as the lands may be
sold at prices and upon terms satisfactory to them,
relator alleging that they are making every effort to
so sell and have not had the intention at any time to
engage in farming or fruit raising, save only as an
incident to preserving the value of these lands until
they can realize thereon.

In February, 1921, P. D. Smith, J. Henry Smith and
W. C. Brown began an action in the superior court for
Okanogan county against the relator and Murray to
recover a balance of $2,000 claimed to be due them as
attorney's fees earned in the foreclosure proceedings
hereinbefore referred to. Summons and complaint
were personally served upon the relator in King
county, Washington, on February 7, 1921, and an affi-
davit in due form was filed setting forth that Murray
was a non-resident of the state of Washington, and a
writ of attachment was sought and issued against him
under which the sheriff of Okanogan county levied
upon the interest of Murray in the real estate which
had been the subject of the foreclosure suits hereinbe-
fore mentioned; and since that time the plaintiffs in

that action have proceeded regularly to serve the summons and complaint upon Murray by publication, he being a resident of the state of Montana, which publication was proceeding in due course but had not been completed at the time of the issuance of the alternative writ herein.   In due course, and within twenty days after service upon it, relator appeared specially in said action and objected to the jurisdiction of the court on the ground that the relator had no office nor agent in, and was not transacting business in, Okanogan county, within the contemplation of § 206, Rem. Code.   These objections to the jurisdiction being overruled, the relator, still preserving its special appearance, made demand for a change of venue to King county, accompanied by an affidavit of merits, and a demurrer to the complaint, which demand was by the trial court denied.   Thereupon the relator sought and obtained an alternative writ of prohibition to be issued out of this court directed to the respondent, as judge of the superior court for Okanogan county, restraining the superior court from proceeding further as against relator until the further order of this court, and requiring it to show cause why it should not be permanently restrained from further proceeding in said cause as against the relator.

The statute reads:

"An action against a corporation may be brought in any county where the corporation transacts business or transacted business at the time the cause of action arose; or in any county where the corporation has an office for the transaction of business or any person resides upon whom process may be served against such corporation, unless otherwise provided in this code." Rem. Code, § 206.

It is not contended that the relator maintained an office or transacted any of its banking or trust business

in Okanogan county, or that any person there resided upon whom process against the relator could be served. We have heretofore held that the mere bringing and prosecution of an action does not constitute the doing of business within the meaning of similar statutes. *Marble Sav. Bank v. Williams*, 23 Wash. 766, 63 Pac. 511; *Lilly-Brackett Co. v. Sonnemann*, 50 Wash. 487, 97 Pac. 505. This being the settled law, it would seem to follow that the incidental care and preservation of the fruits of such an action would come within the same rule. By the terms of our statute, Laws of 1917, ch. 80, p. 291, § 37, a bank or trust company may acquire real estate only for certain purposes or in the collection of debts and foreclosure of its liens and securities; and therefore it must be assumed here that relator was, in its relation to this property, pursuing only its statutory rights to collect its debt. To care for the property, preserve by cultivation and the adding of the necessary means of irrigation was as much a part of the collection of its debt as was the acquiring of the title by means of the foreclosure. The natural result of the care and preservation of orchard lands is the production of a crop, and that this should be marketed and the proceeds as realized applied in satisfaction of the cost of cultivation, treated as income on the debt which is in process of collection or as payment *pro tanto*, does not appear to affect the principle involved.

What is meant by the statutory term "transaction of business" is very well defined by the following:

"It is frequently stated that the words 'doing business' and 'transacting business,' as used in statutes imposing conditions on foreign corporations, refer only to the transaction of the ordinary or customary business in which a corporation is engaged, and do not include acts not constituting any part of its ordinary business. In other words, the test applied is, Is the

corporation engaged in the transaction of that kind of business, or any part thereof, for which it was created and organized? If so, it 'does business,' within the meaning of the constitutions and statutes. If not,—if the act it is doing or has done is not within the purpose of the grant of its general powers and franchises, —it is not the business to which the constitutional or statutory requirement is directed." 12 R. C. L., § 49, p. 71.

And we have already approved and followed this rule. *Rich v. Chicago, Burlington & Quincy R. Co.*, 34 Wash. 14, 74 Pac. 1008; *State ex rel. Wells Lumber Co. v. Superior Court*, 113 Wash. 77, 193 Pac. 229.

We conclude that relator does not, and did not at the time the cause of action arose, transact business in Okanogan county within the statutory meaning of that term.

It is contended, however, that the superior court of Okanogan county had jurisdiction under the terms of Rem. Code, § 207, which provides:

"In all other cases the action must be tried in the county in which the defendants, or some of them, reside at the time of the commencement of the action, or may be served with process, subject, however, to the power of the court to change the place of trial, as provided in the next two succeeding sections."

Of course, had Murray resided in Okanogan county, or had he there been personally served with process, there would be no question as to the right to there proceed. But since Murray was a nonresident of the state, the mere fact that he owned property in that county, which it was sought to attach, cannot be permitted to overweigh relator's rights. While it may be more orderly to proceed against a nonresident defendant in a county in which he has property which is to be attached, the law does not require it, but expressly directs that writs of attachment may issue to other

counties. Rem. Code, §§ 655, 656. And since § 206 of the code is intended for the benefit of corporation defendants residents of the state, the statute may not be set aside, or its force avoided by electing to sue a nonresident codefendant in a particular county when equal relief may be obtained against the nonresident defendant by suing both in the county where the resident corporation transacts business.

Nor was the nonresident defendant Murray served with process in Okanogan county within the meaning of the statute. True, the summons was there being published, but with the intent in law that notice of the pending action should by that means reach Murray at his foreign domicile, where also the statute requires a copy of the summons and complaint to be addressed and mailed to him. The service referred to in § 207 of the code is undoubtedly personal service; but, in any event, when relator raised this issue, the service by publication had not proceeded to a point where Murray could be said to have been served anywhere or at all, in fact had not then been commenced.

Section 207 is applicable in so far as it provides that actions must be tried in the county in which the defendants, or some of them, reside; and since Murray resides in none of the counties of this state and relator resides in King county, we conclude that the action should have been brought in, or transferred to, King county for trial.

The permanent writ will issue.

FULLERTON, MAIN, MITCHELL, BRIDGES, and MACKINTOSH, JJ., concur.

HOLCOMB, J. (dissenting)—It seems to me that this decision is utterly unsound.

Prior to 1909, the statute provided:

"An action against a corporation may be brought in any county where the corporation has an office for the transaction of business, or any person resides upon whom process may be served against such corporation. . . ." Bal. Code, § 4854.

In 1909, this statute was amended so as to read: (Rem. Code, § 206), as follows:

"An action against a corporation may be brought in any county *where the corporation transacts business or transacted business at the time the cause of action arose;* or in any county where the corporation has an office for the transaction of business, or any person resides upon whom process may be served against such corporation, unless otherwise provided in this code." (Italics mine.)

As pointed out by Mr. Justice Mount in *Strandall v. Alaska Lumber Co.,* 73 Wash. 67, 131 Pac. 211, the words "where the corporation transacts business or transacted business at the time the cause of action arose" were inserted into the previous statute evidently for the purpose of authorizing suits to be brought in the county where the corporation transacts business, whether it has an office for that purpose in such county or not.

The present decision would practically eliminate the amendatory provisions of the act of 1909, found in § 206, and prevent such corporation as the relator, which is doing a banking and trust business, from being sued in any county other than the county where it has its office or any person resides upon whom process may be served against such corporation.

It is said in the majority opinion that the business of operating its land as a farm or orchard in Okanogan county is not a part of relator's corporate business, and therefore is not transacting business in Okanogan county within the statutory meaning of the term. This

5—116 WASH.

reasoning is fallacious because the relator, although a bank and trust company, has power incidental to its principal powers of acquiring land through foreclosure and otherwise; of doing business in any county of the state, and incidentally, of managing its lands, actively for the purpose of profit, as it has done in this case for two years. These are certainly incidental powers, and therefore transactions under them constitute "transacting business" within the meaning of the statute.

It is to be presumed the corporation acts only in conformity with its charter powers, and that all its transactions are authorized.

If this reasoning is not correct, then all those who have dealt with the relator as a farmer or orchardist, such as those who furnished supplies and materials for the operation of its farm or orchard, having any controversy with the relator as to the amount due for such supplies and materials, would be obliged to go to King county, the county of relator's residence, in order to maintain an action against it, because it has not been doing business in Okanogan county with these persons with whom it dealt directly and made express or implied contracts.

In my opinion, the statute, Rem. Code, § 206, should receive a liberal construction as to what is the "transaction of business" by a corporation in a county, rather than a strained one. It is evident that the legislature had that in view when enacting § 206. It is no more unjust, or a matter of hardship, upon a corporation transacting any kind of business, either primary or incidental to its corporate powers, to be sued and jurisdiction maintained in a county other than the county of its residence, than it was to require it to go to Okanogan county to maintain its action to foreclose its mortgage upon lands in Okanogan county.

It seems to me that the suggestion of respondents that § 206 should be construed so that a corporation may be sued in the county where it transacts business "upon all matters growing out of the business so transacted in such county," is correct, and that that rule would prevent injustice or hardship and would be calculated to best meet the needs of all concerned.

For these reasons I dissent.

PARKER, C. J., concurs with HOLCOMB, J.